United States Court of Appeals,

Fifth Circuit.

No. 93-1488.

Robert E. MANGIERI, Plaintiff-Appellee,

v.

W. CLIFTON, et al., Defendants,

W. Clifton and Gordon Hager, Defendants-Appellants.

Aug. 25, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, KING and WIENER, Circuit Judges.

GOLDBERG, Circuit Judge:

Dallas Police Officers Walter M. Clifton and Gordon Hager appeal the district court's denial of their motion for summary judgment on the grounds of qualified immunity. The district court found that a question of fact precluded summary judgment because there was still a controversy as to whether the defendant officers acted reasonably when they arrested the plaintiff, Robert Mangieri, for violating the Texas disorderly conduct statute.[1] Finding that no material factual dispute exists that would hinder a decision on qualified immunity as a matter of law, we conclude that these officers acted in an objectively reasonable manner under the circumstances of Mangieri's arrest. We therefore reverse and remand this case with directions to enter judgment for appellants.

I. Facts

---

[1]Tex.Penal Code Ann. 42.01(a) (West 1989).

The basic facts of this case are not in dispute. On Saturday, September 28, 1986, Robert Mangieri participated in an anti-abortion protest outside of a Dallas, Texas women's health clinic. Mangieri was standing on a grassy area next to the clinic's parking lot and was using a bullhorn set at full volume to communicate his opposition to abortion. Although Mangieri directed the bullhorn towards the clinic itself and the patients entering the clinic, the sound could also be heard in nearby apartments.

Officers Clifton and Hager were dispatched to the location of a neighboring residence after the police received complaints from the residents regarding the loud noise. The officers entered the complainant's apartment and spoke with the two occupants. The complainants stated that the noise was annoying and disturbing to them and that it recurred every Saturday. The officers could hear the noise made by Mangieri while they stood in the apartment. They described the sound as annoying and "quite audible". Having confirmed the disturbance created by the amplified voice, the officers exited the apartment and approached Mangieri who was continuing to speak through the bullhorn. The officers did not observe any other persons using a bullhorn. Officer Clifton walked up behind Mangieri and arrested him for disorderly conduct, giving no warning prior to the arrest.[2] Charges against Mangieri were

---

[2]The disorderly conduct statute, Tex.Penal Code Ann. § 42.01(a) (West 1989), provides:

> A person commits an offense if he intentionally or knowingly:

> (5) makes unreasonable noise in a public place or in or

subsequently dropped.

Mangieri filed the instant 42 U.S.C. § 1983 lawsuit on September 20, 1988 against officer Clifton, an unnamed officer John Doe,[3] the City of Dallas, and various other defendants. Mangieri alleged, *inter alia,* that Clifton and officer John Doe violated his Fourth Amendment right to be free from false arrest.

On December 6, 1989, after the parties had been allowed limited discovery, the defendants moved for summary judgment. In this motion, the defendants asserted, in part, that Mangieri's claim of false arrest failed as a matter of law and that the officers were entitled to qualified immunity. The district court denied summary judgment with respect to the false arrest claim and with respect to the assertion of qualified immunity.[4] As to the false arrest claim, the district court concluded that a question of material fact remained as to the reasonableness of the officer's decision to arrest Mangieri. Similarly, as to qualified immunity, the court stated: "The Defendant officers have not shown that they should not have known that their conduct might have violated both state law and the more restrictive city policy. Nor has the court

near a private residence that he has no right to occupy.

[3]Mangieri identified this officer through deposition testimony as Officer Hager. Service of process, however, was never effected with respect to Officer Hager and Hager alleges that he has never made an appearance in this action. Hager has, however, declined to press the issue of the court's personal jurisdiction over him in the present interlocutory appeal.

[4]The district court concluded that Hager too was not entitled to assert a claim of qualified immunity even though Clifton was the only party who had asserted the immunity.

3

determined whether the decision to arrest the Plaintiff without a warning was reasonable."

Clifton filed a timely notice of appeal with respect to the denial of his claim of qualified immunity. That appeal was later withdrawn when the City of Dallas filed a motion for reconsideration. The district court denied the motion for reconsideration in its entirety on April 29, 1993. Clifton and Hager appeal.[5]

II. Analysis

It is now well settled law that denials of summary judgment motions based on a defendant's qualified immunity from suit are subject to interlocutory appeal. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). On appeal,

---

[5]Mangieri contends that Clifton and Hager's second notice of appeal was not timely filed. We disagree. Fed.R.App.P. 4(a)(1) requires that a notice of appeal be filed within thirty days of the entry of the judgment or order appealed from. This thirty day period is tolled under Fed.R.App.P. 4(a)(4), as to all parties, however, if any party makes a timely motion to alter or amend the judgment under Fed.R.Civ.P. 59. The thirty day period for filing a notice of appeal does not begin to run until the district court enters an order disposing of the motion for reconsideration. Fed.R.App.P. 4(a)(4).

A motion for reconsideration is "deemed to arise under Rule 59 if filed within rule 59's ten-day time limit" regardless of the label applied to the motion. *Richardson v. Oldham,* 12 F.3d 1373, 1377 (5th Cir.1994) (citing *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 669 (5th Cir.) (en banc), *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986)). Because the motion for reconsideration in this case was filed within the 10-day limit for Rule 59 motions, the thirty day time period for appealing was tolled. Therefore, the second notice of appeal filed on May 27, 1993, was made within thirty days of the denial of the motion for reconsideration, filed on April 29, and was therefore timely.

we review a denial of summary judgment based upon qualified immunity *de novo,* examining the evidence in the light most favorable to the non-movant. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990).

The question of qualified immunity must be addressed as a threshold issue because this issue determines a defendant's immunity from suit, that is, his or her ability to avoid a trial altogether, rather than merely his or her immunity from damages. *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994); *see also Siegert v. Gilley,* 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1793-94, 114 L.Ed.2d 277 (1991). A police officer is entitled to claim the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993).

We have jurisdiction to review a summary judgment denial of qualified immunity only to the extent that "it turns on an issue of law." *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817. Because the district court determined that a question of fact exists regarding the reasonableness of the probable cause to arrest determination, Mangieri contends that we lack jurisdiction to hear this appeal. We do not agree.

We recently determined that a district court errs in "holding that the objective reasonableness prong of the qualified immunity standard is generally a factual question for the jury." *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir.1993). Following the

5

Supreme Court's decision in *Hunter v. Bryant,* 502 U.S. 224, ----, 112 S.Ct. 534, 536-37, 116 L.Ed.2d 589 (1991), we held that in evaluating a claim of qualified immunity, the district court is to make a determination of the objective reasonableness of the official's act as a matter of law. *Lampkin,* 7 F.3d at 434-35.

Our interpretation of *Hunter* does not preclude the possibility that a disputed question of fact might still eliminate our jurisdiction to hear an appeal of a denial of summary judgment. "[E]ven though [*Hunter* ] diminished the jury's role in qualified immunity cases, it did not entirely abolish it." *Lampkin,* 7 F.3d at 430. A denial of summary judgment based on a material factual dispute would still be appropriate if there are "underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner." *Id.* The parties in *Lampkin* disputed whether force was used against the plaintiffs, the amount of time the plaintiffs were detained, and whether any reason existed to detain the plaintiffs. We concluded that this court would be unable to make the determination of the objective reasonableness of the officer's activities "without settling on a coherent view of what happened in the first place." *Id.*[6]

---

[6]Similarly, in *Johnston v. City of Houston,* we held that "the differing accounts of the various" parties precluded summary judgment on the basis of qualified immunity. 14 F.3d 1056, 1061 (5th Cir.1994). The parties in this case had "divergent versions of what happened" with regards to the force used by the police, the attempt by the arrestee to strike the arresting officer, and the effort by the officer to diffuse the situation. *Id.* at 1058.

In this case, however, there is general agreement as to the factual events that gave rise to this lawsuit. Mangieri was using a bullhorn at full volume when the officers, responding to a disturbance call, witnessed the disturbance for themselves and then proceeded to arrest Mangieri without first admonishing him to stop. The only material factual dispute revolves around the reasonableness of the officer's decision to arrest Mangieri without first issuing a warning. Motions for summary judgment based on qualified immunity are, in the normal course of events, to be resolved as a matter of law. *See Hunter,* 502 U.S. at ----, 112 S.Ct. at 537 ("Immunity ordinarily should be decided by the court long before trial."). Because the historical factual background of this case is not in controversy, the district court erred in refusing to consider the motion for summary judgment because of the disputed issue of the reasonableness of the police officer's decision to arrest Mangieri.

We proceed at this point to an evaluation of the officer's claim of qualified immunity. In determining the applicability of qualified immunity, we employ a two step analysis. "[W]e must first consider whether the asserted constitutional injury involved a clearly established right at the time of the unfortunate event." *Hare v. City of Corinth, Ms.,* 22 F.3d 612, 614 (5th Cir.1994). The right to be free from arrest without probable cause is a clearly established constitutional right. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (The constitutionality of an arrest depends upon "whether, at the moment the arrest was

7

made, the officers had probable cause to make it.").

In the second analytical step, we consider whether the official's actions were objectively reasonable. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Objective reasonableness is assessed in light of legal rules clearly established at the time of the incident. *Pfannstiel,* 918 F.2d at 1183. For warrantless arrests, the test for whether the "police officer ha[d] probable cause to arrest [is] if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Duckett v. City of Cedar Park,* 950 F.2d 272, 278 (5th Cir.1992).[7]

Police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity. *Hunter v. Bryant,* 502 U.S. at ----, 112 S.Ct. at 536 (quoting *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040). "The qualified immunity standard "gives ample room for mistaken judgments' by protecting "all but the plainly incompetent or those who knowingly violate the law.' " *Id.* at ----, at 537 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). Similarly, "[t]he Constitution does not guarantee that only the

---

[7]*See also Beck,* 379 U.S. at 91, 85 S.Ct. at 225 (Whether an arrest is valid depends upon whether at the moment of arrest, "the facts and circumstances within [the police officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense."); *Bennett v. City of Grand Prairie, Tex.,* 883 F.2d 400, 404 (5th Cir.1989) (same).

8

guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."  *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

The central question in the instant case turns on whether probable cause existed to arrest Mangieri.  "Probable cause is a defense to a § 1983 claim based on an alleged false arrest." *Pfannstiel,* 918 F.2d at 1183.  In the instant case, the officers arrested Mangieri based upon their belief that Mangieri had violated the Texas disorderly conduct statute prohibiting the making of "unreasonable noise in a public place or in or near a private residence he has no right to occupy."[8]  The officers made the arrest after entering the complainants apartment, hearing the offending noise, and finding Mangieri engaged in the use of a bullhorn in a location near to the residence.

In enacting this statute, the Texas legislature recognized the First Amendment difficulties that could arise when the police are given too free a reign in apprehending those who, in the course of exercising their right to speak, create disturbing noise.  Section 42.04 provides a defense to prosecution where the offending conduct consists of speech.  This defense provides that a defendant must be "ordered to move, disperse or otherwise remedy the violation prior to his arrest if he has not yet intentionally harmed the interest of others which those sections seek to protect."[9]  In this case,

---

[8]Tex.Penal Code Ann. § 42.01(a)(5).

[9]Tex.Penal Code Ann. § 42.04.

9

probable cause to arrest without a warning would exist, therefore, only if a prudent person would have concluded that Mangieri was intentionally engaging in conduct aimed at harming the interests of others.

Mangieri contends that based upon the facts of his arrest, that he was quite a distance away from the apartments in question[10] and that he was directing the bullhorn away from the apartments, no reasonable officer could have concluded that he intended to harm the interests of the apartment dwellers. We need not confront this contention because probable cause nevertheless existed to arrest Mangieri. Even assuming that Mangieri is correct that it was not reasonable to believe he intended to harm the apartment dweller's peace, it was reasonable for the officers to believe that Mangieri intended to engage in a violation of the disorderly conduct statute.

The subjective beliefs of Clifton and Hager as to what facts they relied upon in forming the probable cause to arrest Mangieri are irrelevant to the objective reasonableness of their actions. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040. The issue here is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he was violating a person's constitutionally protected rights under the circumstances of the

---

[10]There is some dispute as to whether the apartments were 100 feet away as alleged by the defendants or 200 feet as alleged by Mangieri. The precise distance between Mangieri and the complainant's residence, however, is not directly pertinent to our analysis of the reasonableness of the officer's decision given the undisputed testimony of the officers that the noise in the apartment was annoying and "quite audible".

complained of action. *Id.* For this reason, we have held that "[e]ven if there was not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense" to a false arrest section 1983 claim. *Pfannstiel,* 918 F.2d at 1183.

A reasonable officer could have concluded from the circumstances surrounding Mangieri's arrest, that he was intentionally or knowingly making unreasonable noise *in a public place* and that he intended to harm the interests of people in that place in violation of the disorderly conduct statute. Even if he had no intention of disrupting the people in the nearby residences, Mangieri does not dispute that he was attempting to dissuade women from entering the clinic. A reasonable officer could therefore have concluded that by directing at the clinic a bullhorn set at full volume, Mangieri intended to harm the interests of clinic patients and personnel as they entered and left the clinic and who were therefore sharing the public space with him. When they saw Mangieri intentionally disrupting the peace in the public area outside the clinic, the officers possessed the requisite objectively reasonable basis for probable cause to arrest him without a warning.

Texas law states that "[a] person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that ... a different person or property was injured, harmed, or otherwise affected." Tex.Penal Code Ann. § 6.04(b) (West 1994).

11

Under this statute, it would have been objectively reasonable for a police officer to imply a transfer of Mangieri's intent to harm the interests of the clinic patients and staff to an intent to harm the apartment dwellers situated within the sounding disquietude of his bullhorn.

Notice and warning before the arrest was not required in this case because Mangieri's was intentionally engaged in activities to harm the rights of people within the sound area of the horn. Mangieri, with his auditory assault, intended to disturb the peace of those who sought medical attention at the women's health clinic and who had no desire to be subjected to his vituperations. The officers who arrested him, therefore, met their obligation to act in a reasonable manner when they did not warn him prior to that arrest.[11]

In sum, a reasonable officer could have concluded that probable cause existed to arrest Mangieri. For this reason, qualified immunity was improperly denied the appellants. *See Pfannstiel,* 918 F.2d 1183-84. Mangieri has failed to convince us that the officers here were "plainly incompetent" or that they "knowingly violate[d] the law" and therefore these officers cannot be subjected to section 1983 liability for their actions in this case. *Malley v. Briggs,* 475 U.S. at 343, 106 S.Ct. at 1096.

---

[11]Mangieri also contends that his Constitutional rights were violated when the officers failed to abide by a police department policy that required a warning be given prior to an arrest for making unreasonable noise. Mangieri has not cited any authority for his contention that a violation of this police policy gives rise to a deprivation of rights secured by the Constitution.

12

III. Conclusion

The district court's denial of summary judgment on Mangieri's false arrest claim was erroneous.  The judgment of the district court is therefore REVERSED and we REMAND this case with instructions to enter judgment for officers Clifton and Hager on the basis of qualified immunity.

. . . . .

13