**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-50106

BECKY STERNADEL,

Plaintiff-Appellee,

VERSUS

WAYNE SCOTT, Etc.; Et Al.,

Defendants,

WAYNE SCOTT, Executive Director, Texas Department of Criminal
Justice; PAT IVEY; RACHEL GOMEZ; WILLIAM MUSSER; JOE FLORES; CARL
JEFFRIES,

Defendants-Appellants.

Appeal from the United States District Court
For the Western District of Texas, Austin

(A-99-CV-314-SS)

May 7, 2001

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a suit brought by Becky Sternadel
pursuant to 42 U.S.C. § 1983 for a violation of the First
Amendment.  Defendant Wayne Scott filed a motion for summary

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

judgment on the basis of Eleventh Amendment immunity, and defendants Pat Ivey, Rachel Gomez, William Musser, Joe Flores, and Carl Jeffries filed motions for summary judgment on the basis of qualified immunity. The district court denied all of these motions, and this appeal ensued. For the following reasons, we affirm the judgment of the district court based on Eleventh Amendment immunity, but we dismiss the portion of the appeal based on qualified immunity.

## I. Factual and Procedural History

Sternadel was employed as a District Parole Officer for the Texas Department of Criminal Justice, Paroles Division ("TDCJ") in the Wichita Falls District Parole Office. In 1996, she and other parole officers met with a reporter from the Wall Street Journal to discuss the overtime policy and work ethic of the Parole Division. Sternadel was quoted in the article, which revealed that she had received approximately $3000 for unpaid overtime as a result of a settlement with the Labor Department. She later appeared on national television to discuss the article, as well as on local television in an interview along with Ivey, Regional Director of TDCJ.

Five days later, on July 17, 1996, Sternadel was charged with improper association with a client because a parolee had come uninvited to her home and was denied access. Subsequently, she was found not guilty of the violation.

On August 15, 1996, Sternadel attended a public meeting

2

regarding the renewal of a contract between TDCJ and the Salvation Army for a halfway house. Sternadel spoke in opposition to the contract, and the presiding TDCJ Public Information Officer attempted to end the meeting without a vote. After public outcry, a vote was taken, and the contract was not renewed. A notation was placed in Sternadel's file that she had spoken out against the halfway house. In January of 1997, Sternadel complained to Ivey that her supervisors were creating a hostile work environment, and Sternadel alleged that Ivey told her that if this were the old days, she would be gone for what she had done.

On April 1, 1997, Sternadel appeared at the Wichita County Courthouse for a parole hearing on parolee Michael Wilson. At the hearing, Sternadel told Joyce Bond, mother of Michael Wilson, that Wilson's parol would most likely be revoked. Bond and two other Wilson relatives who had also been present at the parol hearing complained to Gomez, Sternadel's supervisor, that Sternadel had behaved unprofessionally during the parole hearing. On April 23, Gomez went to Bond's house to obtain statements from the family members. That day Sternadel was charged with failure to obey a proper order from an authority, use of profane or abusive language or racial slurs, misconduct, and cohabitation with an inmate or an inmate's family, which stemmed from an allegation that Sternadel hugged an inmate. On April 25, Gomez interviewed the inmate who was allegedly hugged as well as another witness, both of whom denied that Sternadel had violated any rules, but no written

3

statements were taken.

A hearing on these violations was held on April 29, 1997, by Flores, Assistant Regional Director of TDCJ. Bond retracted her statements, and Sternadel was found not guilty of two of the violations. However, on May 5, Flores found her guilty of hugging an inmate and recommended dismissal. The following day, Bond contacted Sternadel at her home in order to retract her statement. Sternadel went to Bond's home on May 7, and typed a new statement for Bond as well as for her daughter. Both new statements indicated that Gomez had pressured the witnesses into saying that Sternadel had hugged an inmate. Later, the third of the witnesses also stated that Gomez had told her what to put into her statement.

On May 30, 1997, at a mediation, Sternadel presented evidence that refuted Flores's conclusion that she had hugged an inmate. A new hearing was held, and no discipline was imposed. However, following this hearing, Sternadel was repeatedly charged with violating other rules; most importantly, she was charged with tampering with a witness, based on an allegation that Sternadel promised to lift the warrant on Bond's son if Bond would retract her statement against Sternadel. Musser, an Internal Affairs investigator for TDCJ, investigated the charge and prepared a report; at a September hearing, the presiding officer found her guilty and recommended dismissal. Sternadel was later acquitted of criminal charges stemming from the same conduct. She filed a grievance, which Jeffries, acting Director of the Parole Division,

denied.

Sternadel brought suit under 42 U.S.C. § 1983 against defendants Ivey, Gomez, Musser, Flores, and Jeffries, *inter alios*, in their individual capacities and against Scott in his official capacity. At issue on this appeal are the following motions, all of which were denied: Scott's motion to dismiss based on Eleventh Amendment immunity, and the remaining defendants' motions for summary judgment based on qualified immunity.

## II. Standard of Review

We review the grant of summary judgment de novo, applying the same standards as the district court. Piazza v. Maine, 217 F.3d 239, 244 (5th Cir. 2000). We view facts and inferences in the light most favorable to the non-movant. Hall v. Gillman, Inc., 81 F.3d 35, 36-37 (5th Cir. 1996). Summary judgment is granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

## III. Eleventh Amendment Immunity

Defendant Scott's motion for dismissal is based on a claim of Eleventh Amendment immunity. Sternadel named Scott as a defendant, seeking the prospective equitable relief of reinstatement. Claims for prospective relief are not barred by sovereign immunity when it is alleged that a state official acted in violation of federal law. Warnock v. Pecos County, Texas, 88 F.3d 341, 343 (5th Cir. 1996)

(citing <u>Ex parte Young</u>, 209 U.S. 123, 155-56 (1908); <u>Edelman v. Jordan</u>, 415 U.S. 651, 664 (1974)); <u>see</u> <u>also</u> <u>Brennan v. Stewart</u>, 834 F.2d 1248, 1253 (5th Cir. 1988) ("The Eleventh Amendment and the doctrine of <u>Ex parte Young</u> together create a relatively simple rule of state immunity. Basically, prospective injunctive or declaratory relief against a state is permitted--whatever its financial side-effects--but retrospective relief in the form of a money judgment in compensation for past wrongs--no matter how small--is barred."). Scott argues on appeal that no wrongful act can be attributed to him because all he did was respond to Sternadel that her complaint was being forwarded to Jeffries. However, because of the very nature of the relief sought-- reinstatement to her job as a parole officer in the TDCJ, which is under Scott's direction as Executive Director of TDCJ--Scott is the properly named party and is subject to the <u>Young</u> exception to sovereign immunity. <u>Am. Bank & Trust Co. of Opelousas v. Dent</u>, 982 F.2d 917, 921 (5th Cir. 1993).

## III. Qualified Immunity

This court normally does not have appellate jurisdiction to review the denial of a motion for summary judgment, except when it is premised on a claim of qualified immunity. <u>Lemoine v. New Horizons Ranch & Ctr.</u>, 174 F.3d 629, 633 (5th Cir. 1999) (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985)). However, jurisdiction in those instances is limited to a review of the district court's decision only to the extent it turns on an issue of law, and the

6

court is precluded from conducting a review of the district court's findings of facts. Id. When a district court denies summary judgment because of genuine issues of material fact, we do not have jurisdiction over the conclusion that the fact issues are genuine, but we do have jurisdiction over the conclusion that the fact issues are material. Id. at 633-34. Thus, "this court 'cannot review whether the evidence could support a finding that particular conduct occurred, but can take, as a given, the facts that the district court assumed when it denied summary judgment and determine whether those facts state a claim under clearly established law.'" Meyer v. Austin I.S.D., 161 F.3d 271, 274 (5th Cir. 1998) (quoting Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 548 (5th Cir. 1997)).

"The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." Thompson v. Upshur County, TX, Nos. 99-41023 & 99-41024, 2001 WL 258032, *4 (5th Cir. Mar. 15, 2001). The analysis is two-fold: First, the court must determine whether the plaintiff has alleged the violation of a clearly established federal right, and second, the court must assess whether the defendant's conduct was objectively reasonable in light of clearly established law. Id. at *5; see also Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). A plaintiff must satisfy the following test in order to

7

prove a First Amendment retaliation claim, as Sternadel alleges: (1) the speech was on a matter of public concern; (2) the speech was a substantial or motivating factor for the termination; but the defendant may escape liability by showing that he would have terminated the plaintiff in the absence of the protected speech. Gerhart v. Hayes, 217 F.3d 320, 321 (5th Cir. 2000) (citing Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

On appeal, the defendants argue both that Sternadel has failed to show the violation of a clearly established right and that their actions were objectively reasonable. We, however, agree with the district court that genuine issues of material fact exist as to whether the defendants' motivations in upholding or participating in Sternadel's termination were based on unlawful and unconstitutional retaliation or on other lawful bases. For instance, defendant Jeffries claims that he fired Sternadel on the basis of a good faith reliance on an internal investigative report; however, Sternadel alleges that Jeffries ignored exculpatory evidence. Defendant Ivey argues that he was not personally involved in the investigation of Sternadel; however, Sternadel put forth evidence from an assistant director that Ivey was both personally and actively involved in the investigation. But see Gerhart, 217 F.3d at 322 (finding that summary judgment was appropriate where defendants set forth undisputed evidence that they would have fired plaintiff regardless of protected speech activity); Mangieri, 29 F.3d at 1016 (finding that summary judgment

8

was appropriate where there was general agreement concerning the factual events).

A denial of summary judgment was appropriate because there are underlying facts in dispute that are material to whether the defendants acted with objective reasonableness. Mangieri, 29 F.3d at 1016. Because of this dispute, the defendants' defense of qualified immunity cannot prevail as a matter of law, and this court is without jurisdiction to consider the interlocutory appeal. Lampkin v. City of Nacogdoches, 7 F.3d 430, 436 (5th Cir. 1993).

IV. Conclusion

Therefore, we AFFIRM the judgment of the district court, denying the motion to dismiss on the basis of Eleventh Amendment immunity. We DISMISS the interlocutory appeal based on qualified immunity.