# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20748

THEODORE EISENBACH,

> Plaintiff – Appellant,

v.

MARK ZATZKIN; I. GUZMAN,

> Defendants – Appellees.

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-1685

Before JOLLY, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:*

This lawsuit resulted from a confrontation between Theodore Eisenbach and Mark Zatzkin, a police officer, at the apartment complex where they both lived. That encounter ended with Eisenbach's arrest for Interference with Public Duties under section 38.15 of the Texas Penal Code. The charges were ultimately dismissed, and Eisenbach filed suit. He alleged malicious prosecution under Texas law and deprivation of his constitutional rights under

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20748

42 U.S.C. § 1983.  The district court entered summary judgment in Zatzkin's favor on all claims, holding that Zatzkin was entitled to qualified immunity. We AFFIRM that judgment.

**I**

Eisenbach and Zatzkin were both residents at the same apartment complex.[1]  Zatzkin was a police officer for the City of Jersey Village and served as a courtesy officer at the complex.  Eisenbach was the business manager for an international chemical producer and was waiting for a delivery of chemical samples on the day of the incident in question.

On his way into the apartment complex, the driver delivering the chemical samples to Eisenbach bumped into a pole near the entry gate to the complex with his delivery truck, causing minor damage.  The driver continued into the complex and met Eisenbach outside of Eisenbach's apartment. Meanwhile, Zatzkin's wife told Zatzkin that a truck had hit the pole at the entrance of the complex.  Zatzkin left his apartment to see if he could locate the driver and get the driver's license plate number.

Soon thereafter, Zatzkin found the driver conversing with Eisenbach, who had not yet received his package.  Zatzkin was not in uniform, but he identified himself as an officer when prompted by Eisenbach.  Eisenbach started to explain the situation to Zatzkin, who asked Eisenbach to "leave the area."  Eisenbach then went to stand with some of the apartment complex's staff, who had gathered nearby.  Zatzkin spoke to the driver, checked his identification, and then "moved away from the driver" to the other side of the truck. To Eisenbach, Zatzkin appeared to be filling out some paperwork.  After Zatzkin moved to the other side of the truck, the driver began to take

---

[1] We view the evidence in the light most favorable to Eisenbach, the party opposing summary judgment.  *See Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017).

No. 16-20748

Eisenbach's package out of the truck. Eisenbach took this to mean that Zatzkin's investigation had ended, and he walked toward the driver to sign for his package.

Zatzkin then returned to where Eisenbach and the driver were standing, and, according to Eisenbach, began to shout at the driver. Eisenbach asked Zatzkin "if the constant screaming was necessary" and asked for his badge number. Zatzkin then told Eisenbach that he was under arrest. Another officer, Irvin Guzman, subsequently arrived at the scene and arrested Eisenbach for Interference with Public Duties in violation of Texas Penal Code section 38.15. Guzman transferred Eisenbach to the Harris County jail. Eisenbach spent thirty-three hours in jail, during which he was assaulted and injured by another inmate. He spent $5,000 on a lawyer and was required to make a number of appearances in court as a result of the case brought against him. Ultimately, the charges against him were dismissed for insufficient evidence.

Eisenbach sued Zatzkin and Guzman under 42 U.S.C. § 1983, alleging violations of his First and Fourth Amendment rights. He also alleged malicious prosecution under Texas law, invoking the district court's supplemental jurisdiction. Zatzkin and Guzman filed a joint motion for summary judgment, arguing that they were entitled to qualified immunity. In his opposition to that motion, Eisenbach stated that he no longer wished to pursue his claims against Guzman.[2] After a hearing, the district court,

---

[2] It is unclear whether Eisenbach intends to revive his claims against Guzman on appeal. Eisenbach's brief rarely mentions Guzman outside of section headings, though he also asks us to reverse the district court's grant of summary judgment in favor of Zatzkin and Guzman. On appeal, Zatzkin and Guzman argue that Eisenbach abandoned his claims against Guzman. Eisenbach did not respond to this argument in his reply. In any event, we conclude that he has abandoned any claim against Guzman through his clear and unequivocal representations to the district court. *See Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 434 n.12 (5th Cir. 2002) (plaintiffs abandoned any § 1983 claim "by their clear

presumably understanding Eisenbach to have waived his claims against Guzman, granted summary judgment in Zatzkin's favor. Eisenbach timely appealed, asserting that genuine disputes of material fact remain on each of his claims.

## II

"This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016)). A court must enter summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* This means that a party cannot survive summary judgment with just "a scintilla of evidence" in its favor. *Id.* at 252. Although we view the evidence in the light most favorable to the non-movant, the non-movant must "come forward with specific facts indicating a genuine issue for trial" and cannot merely rely on the allegations in the complaint. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).

"A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Hanks*, 853 F.3d at 744 (citation omitted) (quoting *Brown v.*

---

representations to the district court that they were not alleging any violations of federal rights").

No. 16-20748

*Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). A law is clearly established if every reasonable officer would know that his or her conduct was unlawful. *See Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc).

### III

Eisenbach contends that Zatzkin violated his rights under the Fourth Amendment by arresting him without probable cause. "The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Even if the officer's conclusion was mistaken, he is still entitled to qualified immunity so long as the conclusion was reasonable. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). The question before us is, therefore, whether a reasonable officer could have concluded that there was probable cause to arrest Eisenbach for interference with the duties of a peace officer.

Eisenbach was arrested for Interference with Public Duties under section 38.15 of the Texas Penal Code. Section 38.15 provides: "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). However, "[i]t is a defense . . . that the interruption, disruption, impediment, or interference alleged consisted of speech only." *Id.* § 38.15(d).

Eisenbach argues that there is a genuine dispute of material fact as to whether Zatzkin had completed his investigation when Eisenbach approached

the driver, that his actions did not rise to the level of criminal negligence, and that his actions were limited to speech only.  Zatzkin responds that Eisenbach's admission that he approached the driver and continued to try to speak with him after Zatzkin had instructed Eisenbach to leave the area establishes that he had probable cause to arrest Eisenbach.  Zatzkin further argues that Eisenbach's subjective belief that Zatzkin had concluded his investigation is immaterial to the question of whether a reasonable officer could have concluded that there was probable cause to arrest Eisenbach.

Zatzkin is correct that disobeying the instruction of a police officer who is performing official duties may be sufficient to establish probable cause for an arrest under section 38.15, at least where the instruction pertains to the arrestee's conduct, as opposed to his or her speech.  *See, e.g.*, *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (officer entitled to qualified immunity where arrestee "did more than just argue with police officers; he failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech").  But Eisenbach's position is not merely that he subjectively believed that Zatzkin had concluded the investigation before Eisenbach approached the driver; instead, he maintains that Zatzkin had in fact concluded the investigation and that his return to the area therefore did not violate Zatzkin's instruction.

We conclude, however, that record evidence does not establish a genuine dispute as to whether, for purposes of qualified immunity, a reasonable officer could have concluded that Zatzkin's investigation was ongoing.  According to Eisenbach, Zatzkin was talking to the driver and then moved away to the other side of the truck, where he appeared to be filling out paperwork.  Thus, based on Eisenbach's version of events, Zatzkin had not left the scene and was still engaged in duties relating to his investigation of the driver when Eisenbach

returned to the driver. In declarations by Eisenbach and the driver, both men asserted that Eisenbach approached only after Zatzkin was "done speaking with" the driver. However, those statements are conclusory and provide no concrete facts from which it could be inferred that every reasonable officer in Zatzkin's position would conclude that the investigation had ended.

Because Eisenbach's argument that his actions did not amount to criminal negligence rests on his assertion that he complied with Zatzkin's instruction by returning to the truck only after the investigation was complete, it is similarly unavailing. As to Eisenbach's contention that his actions were limited to speech, a reasonable officer could have believed that, in approaching the delivery truck, contrary to Zatzkin's instruction, Eisenbach's actions went beyond the realm of speech. *See, e.g.*, *Childers*, 848 F.3d at 415; *Haggerty*, 391 F.3d at 657 (reasonable officer could have believed that arrestee's actions were not limited to speech where the arrestee "stepped forward toward [the officer] after having previously been warned to not interfere and was within relative proximity").

Thus, on the record before us, Zatzkin was reasonable in concluding that he had probable cause to arrest Eisenbach, and Eisenbach has therefore failed to raise a genuine fact issue that precludes summary judgment against him on his Fourth Amendment claim. This conclusion is also fatal to Eisenbach's First Amendment claim. *See Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (probable cause to believe an arrestee has committed a crime precludes "any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest").

Zatzkin is entitled to immunity from Eisenbach's malicious-prosecution claim as well. Under Texas law, "official immunity" is a defense to malicious-prosecution claims. *Crostley v. Lamar Cty.*, 717 F.3d 410, 424 (5th Cir. 2013) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). "Texas

law of official immunity is substantially the same as federal qualified immunity." *Id.* (quoting *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997)). Because Zatzkin reasonably believed that he had probable cause to arrest Eisenbach, he is entitled to official immunity on Eisenbach's malicious-prosecution claim. *See id.* (holding that official immunity barred malicious-prosecution claim because officers "were not objectively unreasonable in believing that probable cause existed").

## IV

For these reasons, we AFFIRM the district court's summary judgment dismissal of Eisenbach's claims.