# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 24, 2023

Lyle W. Cayce
Clerk

_____

No. 21-40803

_____

Aaron A. Soto,

            *Plaintiff—Appellee*,

       *versus*

Ulysses Bautista, *in his individual and official capacities as police officer and as agent of the* City of McAllen; Luis Zuniga, *in his individual and official capacities as police officer and as agent of the* City of McAllen,

            *Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:18-CV-151

_____

Before Smith, Clement, and Haynes, *Circuit Judges*.

Per Curiam:[*]

This appeal arises out of two City of McAllen police officers' alleged use of excessive force during a 2016 DWI arrest. The district court orally denied the officers' motions for summary judgment, and they separately appealed. We DISMISS part of the appeal for lack of jurisdiction. We

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-40803

AFFIRM the denial of summary judgment in part and REVERSE and REMAND in part.

## I. Facts

While on patrol around 1:00 a.m. on May 13, 2016, Officer Luis Zuniga noticed Plaintiff-Appellee Aaron Soto driving the wrong way down a one-way street and pulled him over. Zuniga administered a field sobriety test, which Soto failed, and then used a portable breathalyzer to assess Soto's blood alcohol concentration. After the test revealed that Soto was intoxicated, Zuniga arrested him. Zuniga then handcuffed Soto's hands behind his back and escorted him to the police cruiser.

As Zuniga attempted to place Soto into the vehicle, a derogatory exchange ensued in which Soto insulted Zuniga's girlfriend, and Zuniga criticized Soto's mother. When Zuniga tried to secure Soto's seatbelt, Soto leaned toward Zuniga and spit. Zuniga immediately reacted by wrapping his arms around Soto's body, pulling him from his seated position, and thrusting him face first onto the ground. He then leaned over Soto and asked, "[d]id you just spit on me?" as he forcefully dropped his knee onto Soto's upper back. Officer Ulysses Bautista, who was standing nearby, then kicked Soto in his midsection, causing him to cry out. Zuniga continued to press his knee into Soto's upper body for several additional minutes as Soto repeatedly groaned in pain, exclaiming at one point, "[t]hat hurt."

Shortly thereafter, a sergeant arrived with a spit guard and RedMan helmet.[1] Despite the fact that Soto's face was plainly injured, Zuniga and the sergeant placed the spit guard over Soto's mouth and the helmet on his head.

_____

[1] A RedMan helmet is a "protective helmet" which is "worn by students and instructors who are participating in real world defensive tactics training." It is "designed to fit snugly."

No. 21-40803

After Soto refused medical care at the scene, he was transported to the McAllen Police Department jail.  Later, Soto was treated at a hospital where doctors informed him that he had a hairline fracture on his cheekbone and an orbital injury.  He was also diagnosed with possible nerve damage and a fractured tooth at other doctor's visits.

Soto subsequently filed the instant § 1983 suit, alleging that Zuniga and Bautista (collectively, the "Officers") (1) used excessive force in violation of his Fourth and Fourteenth Amendment rights, and (2) were each liable as a bystander to the other's use of force.[2]  The Officers each moved for summary judgment based on qualified immunity.  The district court orally denied both motions due to the existence of genuine issues of material fact.  The Officers each appealed.

We initially remanded the case to the district court "for the limited purpose of specifying what fact disputes exist[ed] as to each defendant."  The district court held a hearing in which it attempted to orally clarify which genuine issues of material fact formed the basis for its denial of summary judgment.  We now consider whether we have jurisdiction over this interlocutory appeal in light of that clarification, and, to the extent we do, we address the merits of this appeal.

## II.  Jurisdiction and Standard of Review

As a threshold matter, we explain our limited jurisdiction over this appeal.  In considering a denial of summary judgment based on qualified immunity, we typically may only review the "material[ity]," but not the

_____

[2] Soto also originally named the City of McAllen as a defendant, but the City was later dismissed.  Soto does not appeal that dismissal.

3

"genuine[ness]," of those factual disputes identified by the district court. *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020).

We normally may not—as the Officers repeatedly urge—accept the defendants' version of facts the district court deemed "disputed." Rather, in this posture, we must accept the district court's determination that certain factual disputes exist and, in determining whether they are material, resolve the disputes in the plaintiff's favor. *Walsh v. Hodge*, 975 F.3d 475, 481 (5th Cir. 2020).

There is, however, one exception to this general rule implicated here. When "there is video evidence that 'blatantly contradict[s]'" certain factual allegations, we do "not adopt the plaintiffs' version of the facts." *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). Rather, we "view those facts 'in the light depicted by the videotape.'" *Id.* at 409 (quoting *Scott*, 550 U.S. at 381).

## III. Excessive Force Claims

We begin by considering Soto's excessive force claims. On remand, the district court identified the following factual disputes precluding summary judgment for the Officers as to these claims: As to Zuniga, the court concluded that there were genuine issues of material fact regarding (1) whether Soto spit on Zuniga, and (2) whether Soto resisted arrest before Zuniga placed him into the squad car. As to Bautista, it determined a genuine issue of material fact existed regarding whether Soto was resisting arrest when Bautista kicked him.[3]

---

[3] The district court also suggested that genuine issues of material fact existed as to whether the force used to restrain Soto was reasonably necessary, whether Zuniga violated clearly established law, and whether Bautista's use of force was objectively reasonable.

No. 21-40803

As a preliminary matter, we address whether the video recordings of the encounter undermine any of these determinations.[4] *See Martin*, 49 F.4th at 409. First, while the video evidence does not definitively demonstrate that Soto *intended* to spit on Zuniga, it does conclusively record Soto making a spitting gesture and the noise of him spitting towards Zuniga. Accordingly, the district court erred in concluding that there was a genuine issue of material fact as to whether Soto actually spit (whether directly at Zuniga or randomly).

However, we agree with the district court that the video evidence is inconclusive as to whether Soto resisted or evaded arrest either before Zuniga thrust him to the ground or prior to Bautista's kick. Accordingly, to the extent the Officers ask us to further "second-guess" the genuineness of these factual disputes, their appeal is dismissed for lack of jurisdiction. *Joseph*, 981 F.3d at 335. We may, however, review whether these remaining genuine issues of fact are "material" when construed in Soto's favor. *Id.*

"We review the materiality of fact issues de novo." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc). To assess whether a genuine factual dispute is material, "we take [Soto's] version of the facts as true and view those facts through the lens of qualified immunity." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020). If the Officers "would still be entitled to qualified immunity under this view of the facts, then any disputed

---

However, these are issues of law—not fact—and are properly resolved by the court on summary judgment. *See, e.g.*, *Mangieri v. Clifton*, 29 F.3d 1012, 1015-16 (5th Cir. 1994).

[4] Two videos depict the interactions between the Officers and Soto: one recording the scene in front of Zuniga's dashboard, which captured the initial stop and Zuniga's administration of the field sobriety test; and another recording the back of the squad car, showing aspects of the Officers' challenged applications of force. Because only the latter video undermines disputed facts identified by the district court, the phrase "video evidence" refers to it exclusively.

facts are not material, the district court's denial of summary judgment was improper," and reversal is warranted. *Id.*

To determine if the Officers would be entitled to qualified immunity based on Soto's version of the remaining disputed facts, we ask two questions: (1) whether the Officers' actions "violated a constitutional right," and (2) "whether the right was clearly established." *Id.* at 190–91 (internal quotation marks and citation omitted).

## A.   Violation of a Constitutional Right

We begin by addressing the first question—that is, if we assume Soto did not resist or evade arrest, did the Officers violate Soto's constitutional right to be free from excessive force?

To establish an excessive force claim, Soto must show that he "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph*, 981 F.3d at 332. "In determining whether the use of force was clearly excessive and clearly unreasonable, we evaluate each officer's actions separately, to the extent possible." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). Accordingly, we begin with Soto's claim that Zuniga used excessive force when he forcefully thrust Soto face first onto the ground and dropped his knee onto his upper body.

Soto has submitted evidence showing that he suffered several injuries as a direct result of Zuniga's conduct, including a hairline fracture, broken tooth, (possible) nerve damage,[5] and an orbital injury.   Therefore, the

---

[5] Soto testified that a neurologist told him he might have nerve damage on the side of his cheekbone, but the doctor couldn't say for sure.  However, Soto contends that ever since the incident he has felt a tingling sensation on the side of his cheekbone during certain activities.

primary issue is whether, under Soto's version of the disputed facts, Zuniga nonetheless acted reasonably. Several factors guide this inquiry, including "(1) the severity of the crime at issue, (2) whether [Soto] posed an immediate threat to the safety of officers or others, and (3) whether [Soto] was actively resisting arrest or attempting to evade arrest by flight." *Joseph*, 981 F.3d at 332 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Our analysis of the first and third *Graham* factors is straightforward. Soto was arrested for drunk driving, which is undoubtedly a serious crime. Therefore, the first factor weighs in favor of Zuniga's reasonableness. However, we've already concluded that we must assume Soto *was not* resisting or evading arrest, so the third factor cuts strongly against Zuniga's reasonableness.

The only remaining factor to assess, then, is whether Soto "posed an immediate threat" to Zuniga. *See Joseph*, 981 F.3d at 332. We conclude that he did not. It's undisputed that Soto was unarmed. Additionally, prior to Zuniga's removing Soto from the car, he was seated in the backseat with his hands restrained behind his back. These facts strongly suggest Zuniga was not at risk of harm, and, therefore, his substantial use of force was unreasonable.

Indeed, this conclusion is consistent with our case law. It is axiomatic under our precedents that applying violent force to an unarmed person who is "restrained and subdued" violates the Constitution. *See Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (concluding officer was not entitled to qualified immunity when officer "forcefully slammed [the plaintiff's] face into a nearby vehicle during her arrest" when she was handcuffed and subdued). This is true *even when* evidence establishes that the plaintiff acted disrespectfully toward the defendant-officer or engaged in passive resistance. *See, e.g.*, *Newman v. Guedry*, 703 F.3d 757, 762–63 (5th Cir. 2012) (holding

7

that officers were not entitled to qualified immunity when they used a taser and nightstick on individual who did not actively resist but made an "off-color joke").

Zuniga, however, urges that Soto's conduct wasn't merely disrespectful. Rather, per Zuniga, Soto's spitting threatened his safety by putting him at risk of contracting "a communicable disease." Yet, we are unconvinced that spitting a single time poses more than a de minimis risk to an officer's safety. To be sure, it's *possible* that Zuniga could've caught a virus from Soto. But given that Soto showed no signs of sickness, and this incident predated the COVID-19 pandemic, that risk seems very low. Moreover, Zuniga's own behavior belies his contention that he was afraid of catching an illness. After Soto spit, Zuniga wrapped himself around Soto, thrust him to the ground, and later leaned over and "wipe[d] [Soto's] face with his arm." This seems like an excellent way to *contract* a virus—not avoid one.

But even if Soto's spitting had posed a non-negligible threat to his safety, it still wouldn't have warranted Zuniga's response. While our precedents recognize that sometimes "officers may need to use physical force to effectuate a suspect's compliance," they nonetheless require officers to "assess the relationship between the need and the amount of force used." *Newman*, 703 F.3d at 763 (alterations adopted)(internal quotation marks and citation omitted). Zuniga's actions suggest he made no such calculation. Slamming an arrestee to the ground hard enough to break his bones is simply not a proportional response to being spit at. Neither, for that matter, is repeatedly dropping one's knees on a prone suspect's spine when he is handcuffed and compliant.

Moreover, Zuniga's use of force was not only inappropriately violent—it was also too immediate. Zuniga did not implement any other

strategy to address Soto's spitting before employing physical force. *See Deville v. Marcantel*, 567 F.3d 156, 167–68 (5th Cir. 2009) (per curiam). Indeed, he "immediately resort[ed] to force without any attempt to de-escalate the [] situation." *Joseph*, 981 F.3d at 334 (quotation omitted). Such conduct does not amount to the "measured and ascending actions" required by our caselaw. *See Poole*, 691 F.3d at 629. Rather, it reflects an impulsive, violent response to perceived disrespect. Therefore, we conclude that on these facts, Zuniga's use of force was "clearly excessive."[6] *See Deville*, 567 F.3d at 167.

Based on the prior analysis, it's also clear that Bautista acted unreasonably by kicking Soto in the side. The district court concluded that it was undisputed that this conduct contributed to Soto's injuries. Additionally, as explained above, our precedents are clear that using objectively unreasonable force on a restrained, compliant individual violates the Fourth Amendment. *Bush*, 513 F.3d at 501. Therefore, given the assumption that Soto wasn't resisting arrest, we conclude that Bautista also violated Soto's right to be free from excessive force.

## B. Clearly Established Law

We now turn to the second prong of the qualified immunity inquiry. Notwithstanding the prior analysis, Zuniga and Bautista are still "entitled to qualified immunity unless" Soto demonstrated that the right in question was "clearly established at the time of the challenged conduct." *Plumhoff v.*

---

[6] Zuniga and Bautista also emphasize that Soto was drunk, and therefore he was more likely to behave unpredictably. While Soto's intoxication is a relevant factor, it is not dispositive in light of the evidence that Soto was handcuffed and subdued during the relevant events, and therefore, "[n]o reasonable officer could conclude [he] posed an immediate threat" to the Officers' safety. *See Cooper v. Brown*, 844 F.3d 517, 522–24 (5th Cir. 2016) (holding that an officer inflicted excessive force during a DUI arrest by declining to release his police dog's bite until after he had handcuffed the suspect).

*Rickard*, 572 U.S. 765, 778 (2014) (internal quotation marks and citation omitted).  A right is clearly established only if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotation omitted).  In making this determination, the Supreme Court and this court have indicated that we may consult "controlling authority" or a robust "consensus of cases of persuasive authority."[7]  *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (same).

In his opening brief, Soto cites several cases which he claims "clearly establish" that the Officers' actions were objectively unreasonable.[8]  Our survey of the law indicates that as of May 13, 2016, at least two of these— *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), and *Deville*, 567 F.3d 156 (5th Cir. 2009)—provided "fair warning" to any reasonable officer that it was unconstitutional to thrust Soto to the ground (after already arresting and handcuffing him), drop a knee on his upper spine, and kick him. In fact, based on Soto's version of the facts, the Officers' conduct was *less* justifiable than the conduct found to violate clearly established law in *Ramirez* and *Deville*.

In *Ramirez*, we held that a reasonable jury could conclude that the defendant-officer violated clearly established law by tasing a handcuffed individual who had merely passively resisted arrest.  716 F.3d at 378.  We

---

[7] We have suggested that such "persuasive authority" includes precedent from other circuit courts, *Swanson*, 659 F.3d at 372 & n.26 (indicating that a consensus of cases from other circuit courts is sufficient, so long as the circuits are in agreement), but likely not unpublished cases, *Garcia v. Blevins*, 957 F.3d 596, 601 (5th Cir. 2020) (stating that a case relied on by the plaintiff "is unpublished" and so "cannot clearly establish the law").

[8] *Doss v. Helpenstell*, 626 F. App'x 453 (5th Cir. 2015) (per curiam) (unpublished); *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013); *Newman*, 703 F.3d at 757; *Deville*, 567 F.3d at 156; *Goodson v. City of Corpus Christi*, 202 F.3d 730 (2000).

noted that the fact that the plaintiff had pulled his arm away when officers initially attempted to restrain him was "insufficient" to show that he posed "an immediate threat to the safety of the officers." *Id.* We further explained that though we "ha[d] not addressed a fact pattern precisely on point," we had previously "held that use of certain force after an arrestee has been restrained and handcuffed is excessive and unreasonable." *Id.* Additionally, we distinguished another case, *Poole*, 691 F.3d at 626, on the grounds that there, "the use of a taser was not excessive" as "the arrestee was *resisting arrest* and the officers *ceased use of the taser once the arrestee was handcuffed and subdued.*" *Ramirez*, 716 F.3d at 378 (emphasis added).

Here, as in *Ramirez*, both officers applied force while Soto was "restrained and handcuffed." *Id.* In fact, based on Soto's version of the facts, Soto was *more* obedient than the *Ramirez* plaintiff—the video does not conclusively demonstrate that Soto made any attempt to evade arrest. Moreover, Soto's spitting—like the *Ramirez* plaintiff's shouting—was disrespectful, but plainly did not "pose[] an immediate threat" to the Officers' safety (at least pre-pandemic). *Id.*

In *Deville*, we similarly concluded that an officer was not entitled to qualified immunity when he used substantial force in response to the plaintiff's mere "passive resistance." 567 F.3d at 169. We emphasized that based on the plaintiff's evidence, the officer "engaged in very little, if any negotiation" before "quickly resort[ing]" to force. *Id.* We also highlighted the paucity of evidence suggesting that the plaintiff planned to flee or otherwise resist arrest. *Id.*

Like the plaintiff in *Deville*, Soto was either confined inside the police cruiser or held down on the ground during the relevant events. In fact, Soto—unlike the *Deville* plaintiff—was handcuffed when the Officers applied force. Additionally, while Soto was undoubtedly crass, there is no

No. 21-40803

evidence he tried to physically harm the Officers or flee the scene. Yet, like the officer in *Deville*, Zuniga and Bautista "quickly resorted" to physical force without providing Soto with any meaningful opportunity to correct his disrespectful behavior. *Id.* at 168. Zuniga thrust Soto out of the car without so much as asking him to stop spitting, and Bautista kicked Soto mere moments later. In fact, the central facts of this case—which took place within *fifteen seconds*—evince an even quicker resort to substantial force than in *Deville*.[9]

In sum, based on the video evidence and assuming Soto's version of the facts, the Officers' use of force was "disproportionate to the situation, in violation of the Fourth Amendment and the clearly established law." *Joseph*, 981 F.3d at 342. Therefore, the district court did not err in denying the Officers' motions for summary judgment as to the excessive force claims.

## IV. Bystander Liability

Finally, we address the district court's denial of summary judgment as to Soto's bystander liability claims. Under our precedents, to establish bystander liability, a plaintiff must show that (1) another officer was engaged in the use of excessive force, and (2) the observing officer had "a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). We've already concluded that Soto has produced sufficient evidence to preclude summary judgment for the Officers as to the first prong.

---

[9] By way of contrast, *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016), provides a helpful counterexample. There, we held that the defendant-officer did *not* violate clearly established law when he performed a "takedown maneuver" on an intoxicated arrestee and subsequently punched him in the head. *Id.* at 311, 316. Notably, however, in *Griggs*, the officer employed the "takedown" *after* Griggs attempted to "lurch[]" away—*before* he was handcuffed or otherwise restrained. *Id.* at 311, 313.

No. 21-40803

However, we conclude that the video evidence conclusively demonstrates that (1) Bautista could not have reacted quickly enough to prevent Zuniga from thrusting Soto to the ground or dropping his knee on Soto's neck, and, in turn, (2) Zuniga could not have prevented Bautista from kicking Soto. Thus, even assuming that both Zuniga and Bautista used excessive force, they each lacked a "reasonable opportunity" to prevent each other's unconstitutional conduct. *See id.* Therefore, the district court erred in denying the Officers' motions for summary judgment on these claims.

## V. Conclusion

For the foregoing reasons, we DISMISS the appeal as to the Officers' challenges to the genuineness of the factual disputes identified by the district court due to lack of jurisdiction. With respect to the parts of the appeal addressing questions of law, we AFFIRM the district court's denial of summary judgment as to Soto's excessive force claims. We REVERSE the district court's denial of summary judgment as to Soto's bystander claims and REMAND for entry of summary judgment in favor of Officers Zuniga and Bautista and for proceedings consistent with this opinion.