# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20001

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2017

Lyle W. Cayce
Clerk

JON PAUL CASTORENA,

      Plaintiff - Appellant

v.

CHRISTOPHER MANUEL ZAMORA, Individually and in his official capacity; CITY OF HOUSTON,

      Defendants - Appellees

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.

PER CURIAM:*

On April 29, 2013, Defendant police officer Christopher Zamora approached Plaintiff Jon Castorena's home based on a noise complaint. Officer Zamora claims that Castorena came to the door and pointed a gun at him, which Castorena disputes. Nevertheless, Officer Zamora procured an arrest warrant for aggravated assault on a peace officer. Hours later, the Houston Police Department ("HPD") SWAT team broke down Castorena's front door

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20001

and arrested him. After being "no-billed" by a grand jury, Castorena sued Defendants Officer Zamora and the City of Houston under 42 U.S.C. §§ 1983 and 1988 alleging Fourth Amendment violations of unlawful entry into his home and unlawful seizure of his person. The district court granted summary judgment to Officer Zamora on the basis of qualified immunity, and to the City of Houston on the basis of insufficient evidence. We AFFIRM the district court's judgment.

## I.

After midnight on April 29, 2013, a neighbor awoke to loud music from Plaintiff Jon Castorena's upstairs terrace. Castorena alleges he had fallen asleep after inadvertently setting his iPad to play music on his fourth floor terrace. The neighbor walked down the street, knocked on Castorena's door, and rang the doorbell. When he got no answer, he called the non-emergency HPD phone number to report the noise. Defendant Officer Zamora, riding alone that night, was dispatched to Castorena's home.

Castorena and Zamora present differing accounts of their subsequent interaction. Castorena alleged he awoke believing someone was breaking into his house. He grabbed his firearm[1] and went to the top of the stairs, where he crouched and looked down to his entryway. Due to the blurred glass on his front door, he could only make out a figure. He yelled out to ask who the figure was, and alleged the figure yelled, "Open this [expletive] door now!" Castorena responded, "I have a gun and I will shoot you if you don't back away from this door." Castorena also "racked his firearm with the barrel of the firearm pointing downward to his right for safety."

Contrary to Castorena's recollection, Zamora stated that when he arrived at Castorena's house—in his police uniform—he heard loud music and

---

[1] Castorena had a concealed handgun license.

2

No. 16-20001

"what sounded like a man slurring his speech, yelling very loudly, trying to sing with music that was playing." Zamora knocked on Castorena's door, rang the doorbell, and announced himself as an HPD officer several times. At that point, Zamora saw "a figure come to the door and yell 'Who is it?'" Zamora again identified himself and asked the figure to open the door. Instead of doing so, Zamora heard a gun being racked. Zamora stepped back and pulled out his own weapon. He then saw the figure inside the house point a gun at him and yell, "Step back from the door. I have a pistol, and I'll shoot you." Officer Zamora recounted that he did not have a hard time seeing Castorena through the front door.

After this initial interaction, Zamora radioed the dispatcher that the person had pointed a gun at him and he needed backup. Meanwhile, Castorena went to his second floor balcony to peer out, where he says he realized that Zamora was a police officer. Zamora looked up and saw Castorena on the balcony and shined his flashlight up. The two then yelled back and forth to each other, though they dispute what was said. Ultimately, Castorena went inside and turned off the music. Other police officers arrived thereafter.

Castorena alleges he was terrified to go outside so he called 9-1-1, where he was connected with an HPD sergeant. The sergeant told Castorena he would get back to him, but after waiting in vain for a half hour, Castorena alleged he became ill, took medication, and fell asleep. In the meantime, HPD Sergeants Welch and Tewold arrived at the scene.[2] Upon learning from Officer Zamora that a pistol was pointed at Zamora, Sergeant Tewold believed Castorena had committed a crime.

---

[2] At some point, Castorena communicated with Sergeant Welch, who confirmed that Castorena had a gun but would not come outside.

3

No. 16-20001

Sergeant Tewold contacted an assistant district attorney, who accepted the charge for aggravated assault on a peace officer. SWAT was apprised of the situation and instructed the primary officer to get an arrest warrant. Sergeant Tewold sent Zamora to the DA to obtain the warrant. The ADA's warrant application included Zamora's statement of probable cause:

> Affiant, C. Zamora, is a Peace officer assigned to the [HPD] and he has reason to believe and does believe that the Defendant, Jon Castorena, committed the felony offense of Aggravated Assault on a Police Officer . . .
>
> Affiant states that on April 29, 2013 he went to a residence . . . in Houston, Harris County, Texas in response to a loud music disturbance. Affiant states that he went to the door in full police uniform and he observed the Defendant, a person he identified by viewing his driver's license photograph on a computer screen, with a gun in his hand. Affiant states that he observed the Defendant point the weapon at your affiant while the Defendant was standing in his house and your affiant was standing outside of the Defendant's house.

SWAT and the Hostage Negotiation Team ("HNT") arrived at 3:44 a.m. At 4:27 a.m., Castorena and HPD established communication. After back-and-forth between the HNT and Castorena, SWAT broke the front door with a ram device. Castorena claims they did so before he had a chance to peacefully exit as discussed on the phone, but ultimately Castorena walked outside on his own. Castorena states he was charged with "felony aggravated assault of a police officer with a deadly weapon." Ultimately, however, Castorena was "no-billed" by the grand jury.

Castorena filed his a complaint under 42 U.S.C. §§ 1983, 1988, alleging Fourth Amendment violations of unlawful entry into his home with a falsified warrant and unlawful seizure of his person. Defendants Zamora and City of Houston separately moved for summary judgment, which the district court granted. Castorena now appeals.

4

No. 16-20001

## II.

The district court's jurisdiction was proper under 28 U.S.C. §§ 1331 and 1343, as is this Court's under 28 U.S.C. § 1291. "We review a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court."[3] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] However,

> [a] good-faith assertion of qualified immunity 'alters the usual summary judgment burden of proof.' We draw all inferences in favor of the plaintiff (i.e., the nonmovant), but once a state official (i.e., the movant) asserts the defense, the burden shifts to the plaintiff to show that the defense is not available.[5]

"The plaintiff therefore bears the burden of showing a genuine and material dispute as to whether the official is entitled to qualified immunity."[6] "In conducting the qualified immunity analysis, we 'may not resolve genuine disputes of fact in favor of the party seeking summary judgment.'"[7]

## III.

With respect to Defendant Zamora, Castorena has failed to show a genuine and material dispute as to whether Zamora is entitled to qualified immunity. With respect to Defendant City of Houston, Castorena has similarly failed to show a genuine dispute of material fact with regard to the elements of municipal liability. We accordingly affirm the district court's judgment.

---

[3] *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 365 (5th Cir. 2012) (citation omitted).

[4] FED. R. CIV. P. 56(a).

[5] *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (citations omitted).

[6] *Id.* (citation omitted).

[7] *Id.* at 377 (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

No. 16-20001

### A.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[8] "The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'"[9] This appeal focuses on the first step.

Castorena contended Zamora lied in order to procure an arrest warrant, effectively alleging a civil *Franks v. Delaware*[10] claim. Castorena focuses his dispute on two of the district court's six "undisputed facts."[11] He does not press legal arguments nor does he respond to Officer Zamora's legal theories. Instead, Castorena reiterates his initial belief that Officer Zamora was an intruder and did not make it clear otherwise, and recounts the events from the night. Officer Zamora responds that qualified immunity was properly granted because there was no violation of constitutional law. Notably, Zamora suggests there is no Fourth Amendment violation if probable cause is established independent of the alleged false information, and that a court must "include undisputed facts that were not included in the warrant application" in its

---

[8] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

[9] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (citations omitted)).

[10] 438 U.S. 154 (1978).

[11] Those disputed facts, which Castorena states require context and specificity, are: (1) "Officer Zamora was in uniform and identified himself as an officer when he responded to the noise complaints," and (6), "Castorena, after realizing Officer Zamora was a police officer and not a burglar, never exited the home to discuss [the] incident, but instead called 911 to complain there was an officer who would not leave and then fell asleep." Castorena does not dispute the other four facts: "(2) Castorena had a gun; (3) Castorena 'racked' the gun; (4) Castorena stated 'I have a gun and I will shoot you if you don't back away from this door[']; (5) Officer Zamora heard either the racking or statement and retreated as if [he] was aware Castorena had a gun he intended to use."

6

No. 16-20001

inquiry. Zamora then reasons that the undisputed facts established probable cause for aggravated assault of a peace officer.[12]

In *Franks v. Delaware*, the Supreme Court held that criminal defendants may challenge allegedly false statements in warrant affidavits.[13] Plaintiffs may bring civil *Franks* claims based on allegations of either an intentional falsification or material omission in a warrant application.[14] In analyzing Plaintiff's claim, the district court adopted Officer Zamora's stated test of extracting the alleged falsity and analyzing everything else known to the officer for probable cause. Castorena conceded to the use of this test, under which Zamora is entitled to summary judgment.

Even though there is a question whether the district court applied the proper legal test, Castorena abandoned any argument as to the legal test for failing to brief it on appeal. "Issues submitted to this Court that are inadequately briefed are considered abandoned."[15] Here, Castorena did not contest Zamora's version of the governing legal test. As in *Legate v. Livingston*, Castorena "fails to substantively address [this] issue[] in his brief . . . . A party

---

[12] *See* TEX. PENAL CODE ANN. § 22.01(a) (West 2011); *Id.* at § 22.02(a) ("A person commits an offense if the person commits assault as defined in § 22.01 and the person . . . (2) uses or exhibits a deadly weapon during the commission of the assault.").

[13] *Franks*, 438 U.S. at 155–56.

[14] *See, e.g.*, *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006); *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (per curiam) (unpublished). Our Court recently granted rehearing en banc in *Melton v. Phillips*, 837 F.3d 502 (5th Cir. 2016), *reh'g en banc granted*, No. 15-10604, 2017 WL 629267 (5th Cir. Feb. 15, 2017) (mem), which concerns a similar context, but which does not affect our analysis in the present case.

[15] *Davis v. Davis*, 826 F.3d 258, 266 (5th Cir. 2016) (citation omitted) (plaintiffs abandoned claims they "only briefly mention" on appeal with "entirely conclusory" arguments); FED. R. APP. P. 28(a)(8)(A) (argument on appeal must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

7

that fails to adequately address an argument asserted on appeal is deemed to have waived that argument."[16]

Even in the court below, Castorena argued within the confines of Officer Zamora's stated legal test. Under this test, Officer Zamora is entitled to qualified immunity. Based on Castorena's threat and racking of his gun—facts Castorena does not dispute—Officer Zamora had probable cause for Castorena's arrest. Castorena has not shown a genuine dispute of material fact that Officer Zamora violated his constitutional rights.

**B.**

Defendant City of Houston is also entitled to summary judgment, as Castorena has failed to offer sufficient evidence at this stage to show municipal liability. Castorena alleges the district court improperly applied the summary judgment standard, and points to factual inconsistencies and disagreements with Defendant witnesses. Castorena expresses problems with the HPD policy of classifying "special threat situations" based on a "barricaded suspect," because it improperly classifies homeowners who threaten people they believe to be burglars. Similarly, Castorena suggests the HPD policy that did not require Sergeant Tewold to report certain facts to the ADA, or include in his incident report, is problematic.

The City of Houston argues that "Castorena has shown no evidence of a policy, custom, or widespread practice," nor has he shown that Houston's policymaker had knowledge of any widespread practice of unconstitutional actions that was disregarded. Houston further maintains that HPD "General Orders" constitute official policies, that HPD's training policies exceed state requirements and show a commitment to respecting civil rights, that there is

---

[16] 822 F.3d 207, 211 (5th Cir. 2016) (citations omitted), *cert. denied sub nom. Legate v. Collier*, 137 S. Ct. 489 (2016) (mem), *reh'g denied*, No. 16-5915, 2017 WL 670685 (U.S. Feb. 21, 2017).

No. 16-20001

no evidence to support Castorena's failure to train, supervise, or discipline claim, and that there is no evidence of either deliberate indifference or that any policy constituted a "moving force" behind alleged constitutional violations.

"Municipal liability inures only when the execution of a local government's policy or custom causes the injury."[17] "[T]o hold a municipality liable under § 1983, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a 'violation of constitutional rights whose "moving force" is the policy or custom.'"[18] In order to demonstrate "moving force," "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[19] As this Court has explained:

> The "moving force" inquiry imposes a causation standard higher than "but for" causation. Under the culpability requirement, if the policy is facially lawful, a plaintiff must also show that the municipality "promulgated [the policy] with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." Even a showing of heightened negligence is insufficient to show the deliberate indifference needed to prove municipal liability.[20]

---

[17] *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

[18] *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citations omitted). "Official policy" means "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority" or "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (citation omitted).

[19] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

[20] *Mason*, 806 F.3d at 280 (citations omitted).

9

No. 16-20001

In the district court, Castorena alleged municipal liability on the basis of three policies: (1) a "barricaded suspect" policy that improperly classifies homeowners, (2) a policy that does not require HPD officers to make it known to homeowners that they are actually police officers when approaching homes at night, and (3) a policy that allows officers to omit reporting "exculpatory" information to the DA when calling in a potential crime. On appeal, Castorena narrows his challenge to only the first policy, arguing that Houston's "Special Threat Situation" policy and closely related "Barricaded Suspect" policy led to a violation of his constitutional rights.

Castorena has therefore abandoned his other two arguments as to municipal liability.[21] But, even if Castorena had preserved those arguments, they would fail. As to both of the other alleged policies, Castorena has offered insufficient evidence to show a genuine issue of material fact that the policies were a "moving force" behind any constitutional violation. To the extent Castorena alleges policies of inadequate training, he has failed to offer sufficient evidence of the required elements.[22]

The remaining challenged policy is HPD's "Special Threat Situation" policy and "Barricaded Suspect" policy, explained in HPD General Order 600-05. That order states in relevant part:

---

[21] *Davis*, 826 F.3d at 266; *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam) ("Although we liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with the standards of Rule 28." (citations omitted)).

[22] *Baker*, 75 F.3d at 200 ("In order to hold a municipality liable under § 1983 for its employees' acts, a plaintiff must show that a policy of hiring or training caused those acts. Such a showing requires proof that (1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. Where the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal liability if the failure to train satisfies the 'deliberate indifference' standard that applies to supervisor liability." (citations omitted)).

The [HPD's] [SWAT] Detail and [HNT] shall be used in all *special threat situations* as defined in this General Order.

***Special Threat Situation***. Any situation involving a . . . *barricaded suspect, hostage situation* . . . or threatened suicide involving a weapon or from an elevated structure such as a bridge or building.

> ***Barricaded Suspect.*** Any person who:
>
> a. Has demonstrated capability and/or stated the intent to cause death or serious bodily injury to any person, including himself, and
>
> b. Has achieved tactical superiority by location or the use of a physical obstruction (e.g., an open field, a building, a vehicle, any natural or man-made barrier).

Assuming *arguendo* that Castorena has shown (1) a policymaker, and (2) that General Order 600-05 is an official policy, he has failed to show a genuine and material dispute that the policy was the "moving force" of any alleged violation of Castorena's constitutional rights to privacy, to be free from unreasonable searches and seizures, or to be free from excessive force. Castorena has not offered sufficient evidence on summary judgment that Houston promulgated General Order 600-05 "with deliberate indifference to the known or obvious consequences that constitutional violations would result."[23] Furthermore, Castorena has not offered sufficient evidence of "a direct causal link between the municipal action and the deprivation of federal rights."[24] Although Castorena has made arguments about Sergeant Tewold's response to the incident, and about whether General Order 600-05 allows too much discretion as to who can be classified as a "barricaded suspect," he has

---

[23] *Mason*, 806 F.3d at 280 (citations and internal quotation marks omitted).
[24] *Brown*, 520 U.S. at 404.

No. 16-20001

not sufficiently shown that the *policy* was the "moving force" behind alleged constitutional violations.

Moreover, to the extent Castorena argues that the policy was not the official HPD General Order 600-05, but was rather a "persistent, widespread practice" of labeling "Special Threat Situations" and "Barricaded Suspects" in a certain manner, Castorena has failed to show that such a practice was "so common and well settled as to constitute a custom that fairly represents municipal policy."[25] "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."[26] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[27] Here, Castorena has not offered sufficient evidence to do so on his municipal liability claim.

Judgment AFFIRMED.

---

[25] *Mason*, 806 F.3d at 280 (citation omitted).

[26] *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc) (citations omitted).

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted).