Tom S. Lee, UNITED STATES DISTRICT JUDGE
The case is before the court on separate motions by defendants Tracy Tullos and *558 Rob Heflin for summary judgment based on qualified immunity pursuant to Rules 56 of the Federal Rules of Civil Procedure and for judgment on the pleadings pursuant to Rule 12(c). Plaintiff Alan Atwood has responded in opposition to the motion. The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motions are well-taken and should be granted.
Alan Atwood (Atwood) has brought the present action against Rob Heflin and Tracy Tullos, officers with the Mississippi Department of Wildlife, Fisheries and Parks (MDWFP), alleging federal claims under 42 U.S.C. § 1983 for violations of his Fourth Amendment right to be free from unreasonable seizure and for excessive force in violation of the Fourth Amendment, together with myriad state law claims relating to his December 27, 2015 arrest and subsequent prosecution on various charges.[1] The basic facts are undisputed. On the night of December 27, 2015, around 9:00 p.m., Atwood was driving his truck along Summerall Road in Issaquena County. Miles Hallberg, a friend, was in the passenger seat and Atwood's wife, Donna, was in the backseat. Sergeant Rob Heflin saw the truck from some distance away, as the truck was brightly lit, with LED lights shining to the front, sides and rear. Sergeant Heflin suspected the truck's occupants were headlighting deer, so he pulled the truck over. When he got to the truck, Heflin observed a .223 rifle in plain view in the front seat, next to Hallberg's leg. He inquired whether the gun was loaded, and Atwood responded that it was. Sergeant Heflin ordered the occupants out of the vehicle and placed Atwood and Hallberg in handcuffs. He asked Donna Atwood to activate the truck's auxiliary lights, which he then photographed.
In the meantime, Lieutenant Tracy Tullos, Heflin's supervisor, arrived at the scene. At Heflin's request, Tullos contacted the Issaqeuna County Sheriff's Department to request a deputy to transport the arrestees to the county jail and called for a tow truck for Atwood's truck. Both took a long time to arrive, since they were some distance away. While they waited, Atwood and Hallberg stood beside the truck, handcuffed behind their backs, and Heflin filled out paperwork.
By the time the tow truck arrived, Heflin had decided that he was not going to arrest Donna. Because she was not being arrested, Atwood asked the officers to let Donna drive the truck instead of having it towed. According to Atwood, the officers refused to release the truck to Donna until Atwood paid the tow truck driver $250 in cash.
Atwood and Hallberg were charged with headlighting deer in violation of Mississippi Code Ann. § 49-7-95 ; hunting from a public road in violation of § 95-15-13; unlawful shot size in violation of MDWFP regulations; and unauthorized use of auxiliary lights in violation of § 63-7-17. Atwood appeared before the Issaquena County Justice Court on March 3, 2016. The court sua sponte reduced the charge of headlighting deer to a charge of harassment of wildlife in violation of Mississippi Code Annotated § 49-7-95(5) and found Atwood guilty of that offense.[2] The court also found him guilty on the charges of unauthorized shot size and unauthorized *559 use of auxiliary driving lamps but found him not guilty on the charge of hunting from a public road. On appeal, the Issaquena County Circuit Court, by order entered December 5, 2016, granted a motion by Atwood to dismiss the charges of unauthorized shot size and unauthorized use of auxiliary driving lamps. The court set a February 13, 2016 trial date on the remaining charge of harassment of wildlife. On February 13, 2016, following the trial, the court found Atwood guilty of violating § 47-9-95(5).
Atwood filed the present action on March 7, 2017 asserting federal and state claims relating to these events. As to Atwood's federal claims under § 1983, defendants contend they are entitled to summary judgment on the basis of qualified immunity. As to his state claims, they seek dismissal via summary judgment and/or judgment on the pleadings.
Summary Judgment Standard
Under Federal Rule of Civil Procedure 56(a), summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Typically on a summary judgment motion, the moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986). However, a government official's good faith assertion of a qualified immunity defense alters the usual summary judgment burden of proof. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). Once the official asserts qualified immunity, the plaintiff has the burden to show there is a genuine and material dispute as to whether qualified immunity applies. Castorena v. Zamora, 684 Fed.Appx. 360, 363 (5th Cir. 2017) (citations omitted). See also Thompson v. Upshur Cty., TX, 245 F.3d 447, 456 (5th Cir. 2001) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.") (internal quotation marks and citation omitted). When evaluating whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398-99 (5th Cir. 2008). In so doing, the court must draw all reasonable inferences in favor of the nonmoving party, even on a summary judgment motion based on qualified immunity. See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.").
Judgment on the Pleadings Standard
The purpose of Rule 12(c) is to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. Great Plains Trust. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002). In deciding a 12(c) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."
*560 In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007).
Section 1983 and Qualified Immunity
To prevail on a claim under § 1983, a plaintiff must (1) prove a violation of a right secured by the Constitution or laws of the United States and (2) show that the alleged deprivation was committed by a person acting under color of state law. Anderson v. Valdez, 845 F.3d 580, 599 (5th Cir. 2016). Here, Atwood alleges that the defendant officers, acting under state law, violated his rights under the Fourth Amendment by stopping him without reasonable suspicion; arresting him for various offenses without probable cause; and handcuffing him behind his back for more than two hours before transporting him to jail. Defendants contend they are entitled to summary judgment on these claims based on qualified immunity.
The doctrine of qualified immunity shields officials from civil liability so long as their conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982) ). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074, 2085, 179 L.Ed. 2d 1149 (2011) (internal quotation marks and citation omitted). When an official raises qualified immunity, the plaintiff has the burden to overcome the defense by showing that "(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." Porter v. Epps, 659 F.3d 440, 445 (5th Cir. 2011).
"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' " al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987) ). To find that the law was clearly established, "[the court] must be able to point to controlling authority-or a robust consensus of persuasive authority-that defines the contours of the right in question with a high degree of particularity." Morgan v. Swanson, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (brackets and internal quotation marks omitted) (quoting al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074 ). That does not mean that there must be a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Al-Kidd, 563 U.S. at 741, 131 S.Ct. 2074.
Fourth Amendment-Protection from Unreasonable Seizure
The Fourth Amendment protects the right of individuals to be free from unreasonable seizure. See U.S. Const. amend. IV. Stopping a vehicle and detaining its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. Brendlin v. California, 551 U.S. 249, 255-56, 127 S.Ct. 2400, 168 L.Ed. 2d 132 (2007). Whether such a seizure is constitutionally permissible is determined under the "reasonable suspicion" standard set forth in *561 Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). See United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005) ("For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."). An arrest is also a seizure. Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). Whether an arrest is constitutionally permissible is determined under a "probable cause" standard. Id.
For purposes of the qualified immunity analysis, it was clearly established at the time of the incident that a traffic stop must be predicated on reasonable suspicion. See Brendlin, 551 U.S. at 255-56, 127 S.Ct. 2400. The right to be free from arrest without probable cause was also clearly established. See Mangieri, 29 F.3d at 1016. Thus, plaintiff has alleged a violation of his constitutional rights. The question on the present motion is whether defendants' actions were objectively reasonable in light of clearly established law.
Heflin maintains he had reasonable suspicion to make the initial stop of Atwood and thereafter developed probable cause for Atwood's arrest; he further contends he is entitled to summary judgment based on qualified immunity because, at the very least, a reasonable officer in his position would have believed reasonable suspicion existed for the stop and that there was probable cause for the arrest. For his part, Tullos asserts that since there is no respondeat superior liability under § 1983,[3] he cannot be held liable for any alleged Fourth Amendment violation in connection with the stop and arrest of Atwood since he was not present for and was not involved in the initial stop[4] and did not participate in the decision to arrest Atwood. However, he also maintains, like Heflin, that even if he had been involved in the arrest, he would be entitled to qualified immunity as there was probable cause for Atwood's arrest and/or a reasonable officer would have believed there was probable cause for the arrest.[5]
For defendants to be entitled to qualified immunity, plaintiff must show that a reasonable officer in Heflin's position could not have believed there was reasonable suspicion to stop Atwood or probable cause to arrest him for any of the charged offenses. As this court explained in Carney v. Lewis,
Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest[,]" Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001) (citing Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995) ), so that "[i]f there was probable cause for any of the charges made ... then the arrest was supported by probable cause, and the claim for false arrest fails," id. (quoting Wells, 45 F.3d at 95 ); see also Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990) (stating that "[e]ven if there was not probable cause to arrest the plaintiff for the crime *562 charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense."); Whitfield v. City of Ridgeland, Civ. Action No. 3:11CV744TSL-JMR, 2013 WL 6632092, at *4-5 (S.D. Miss. Dec. 17, 2013) (finding that where there was probable cause to arrest the plaintiff for speeding, the plaintiff's Fourth Amendment claim for false arrest on a separate charge of driving under the influence failed as a matter of law).
No. 3:14CV286TSL-JCG, 2014 WL 7231772, at *2 (S.D. Miss. Dec. 18, 2014).
Under the reasonable suspicion standard, a seizure is reasonable if the officer can identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the seizure. Terry, 392 U.S. at 21, 88 S.Ct. 1868. As the Fifth Circuit has noted, "reasonable suspicion is considerably easier for the government to establish than probable cause." Estep v. Dallas Cty., Tex., 310 F.3d 353, 363 (5th Cir. 2002) (internal quotation marks and citation omitted). "Reasonable suspicion requires only a minimum level of objective justification, just 'more than a hunch.' " Id. (quoting United States v. Michelletti, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) ). See also Gonzalez v. Huerta, 826 F.3d 854, 856 (5th Cir. 2016), cert. denied, --- U.S. ----, 137 S.Ct. 697, 196 L.Ed. 2d 529 (2017) (quoting United States v. Gonzalez, 190 F.3d 668, 671 (5th Cir. 1999) (reasonable suspicion "requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence."). In evaluating whether reasonable suspicion existed for a particular stop, the court considers the totality of the circumstances, taking into account that officers must be allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Brigham, 382 F.3d 500, 507 (5th Cir.2004) (en banc) (internal quotation marks omitted).
In the court's opinion, a reasonable officer in Heflin's position could have believed there reasonable suspicion to stop Atwood for headlighting deer. At the very least, Atwood has not demonstrated that no reasonable officer in Heflin's position could have believed there was reasonable suspicion for the stop. Heflin has explained that prior to the evening of December 27, 2015, he had received several complaints about a vehicle matching the description of Atwood's shining lights from Highway 465 through a tree farm and on the levee in the previous weeks. He states that when he saw Atwood's vehicle on the evening of December 27, the bright LED auxiliary lights were fully illuminated, which was indicative of headlighting, in an area where wildlife is known to be present. He suspected headlighting and stopped the vehicle.
Mississippi Code Annotated § 49-7-95(1) makes it unlawful to hunt deer at night "by headlighting, by any lighting device or light amplifying...." The statute states:
(b) For any person to be charged with a violation of this subsection, that person must have been observed committing an overt act consistent with the hunting of deer at night with the aid of a light, lighting device or light amplifying device. Such observation of an overt act may include, but shall not be limited to, witnessing the discharge of a weapon capable of killing a deer, hearing the report of a firearm being fired, seeing the person in possession of a recently killed deer which could not have been killed during legal hunting hours, or witnessing the person committing any acts *563 consistent with headlighting deer in violation of this subsection.
"Nothing in the statute requires the killing of a deer or even the firing of a shot to constitute the offense of 'headlighting' ". Pharr v. State, 465 So.2d 294, 300 (Miss. 1984). It does not even require the presence of deer in the area. See id. (observing that "one can be in the woods and never see a deer and still be 'hunting' "). All the statute requires is that the person have been observed "committing any acts consistent with headlighting deer...." Miss. Code Ann. § 49-7-95 (emphasis added). This includes shining a bright light into the woods or fields. See Pharr, 465 So.2d at 300 (finding headlighting occurred when conservation officer observing the defendant's vehicle saw a "Q-beam light being thrown from one side of the road to the other, scanning the fields and the woods"). Here, Atwood argues that Heflin could not have reasonably suspected headlighting as he did not observe Atwood moving or manipulating the lights on the truck so as to shine them into the woods or fields. However, the truck itself was equipped with multiple LED spotlights that cast bright light out from the vehicle in every direction, to the front, rear and sides, making manipulation of the lights unnecessary to illuminate the surroundings. Indeed, in adjudicating Atwood guilty on the charge of harassment of wildlife, the circuit judge found that Atwood "did shine a light from a public road right-of-way.... [T]he light shined was not the normal use of headlights of a vehicle but banks of lights totaling 24 LED spotlights."
Probable Cause
"For warrantless arrests, the test for whether the 'police officer ha[d] probable cause to arrest [is] if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.' " Mangieri, 29 F.3d at 1016 (quoting Duckett v. City of Cedar Park, 950 F.2d 272, 278 (5th Cir. 1992) ). In the case at bar, the fact that Atwood was convicted of the related offense of harassment of wildlife establishes there was probable cause for his arrest on the charge of headlighting deer.
To be sure, probable cause is a defense to a § 1983 claim for false arrest. Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990) (citation omitted). Further, even if there is no probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense also constitutes a defense. Id. (citation omitted). Indeed, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Devenpeck v. Alford, 543 U.S. 146, 152-154, 125 S.Ct. 588, 593-594, 160 L.Ed.2d 537 (2004). The offense establishing probable cause need not even be "closely related" to, or based on the same conduct that motivated the arresting officer. Id.
Stringfellow v. City of Ruston, No. CV 16-0756, 2017 WL 3202830, at *15 (W.D. La. July 26, 2017).
Even without the conviction, the record evidence demonstrates there was probable cause, and certainly shows that a reasonable officer in Heflin's position could have believed there was probable cause for Atwood's arrest for headlighting. In this regard, it is undisputed that after Atwood's vehicle was stopped, Heflin observed a .223 rifle in plain view in the front seat, which Atwood reported was loaded.
Mississippi Code Annotated § 49-7-49 states that "[f]or the purpose of this chapter, the fact that any person shall be found in the possession of a ... device of any description whatsoever used for the purpose of taking wild animals ... in the *564 natural habitat of such animals, birds, or fish ... shall be prima facie evidence that such person is or has been hunting...." Miss. Code Ann. § 49-7-49 (emphasis added). A loaded rifle is clearly a "device ... used for the purpose of taking wild animals." The rifle, coupled with the bright lights on the vehicle, were activities "consistent with headlighting deer" in violation § 49-7-95(1)(b), and would have warranted a reasonable officer in concluding there was probable cause to believe that Atwood was guilty of the offense.
The fact that Atwood was not ultimately convicted of the headlighting offense is of no moment in the probable cause analysis, for in determining whether there was probable cause-or whether a reasonable officer would have believed there was probable cause-
the relevant inquiry is not whether [the] plaintiff[ ] [was] guilty of the crime for which [he was] arrested and charged, for there is no guarantee in the law that only the guilty will be arrested and charged with crimes. See Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed. 2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released."); see also Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 754 (5th Cir. 2001) ("Whether the crime actually occurred or whether a suspect is eventually convicted is irrelevant to the probable cause analysis. The inquiry focuses only on what the officer could have reasonably believed at the time based on the relevant law, as well as the facts supplied to him by the eyewitness."); Keen v. Simpson County, 904 So.2d 1157, 1161 (Miss. Ct. App. 2004) (so long as probable cause exists for an arrest, a suit for false arrest and malicious prosecution will not lie even when the defendant is subsequently tried and found "not guilty").
Mitchell v. City of Jackson, Miss., 481 F.Supp.2d 586, 589-90 (S.D. Miss. 2006), aff'd sub nom. Mitchell v. City of Jackson, 223 Fed.Appx. 411 (5th Cir. 2007).
Based on the foregoing, the court concludes that defendants have qualified immunity as to Atwood's claim for unlawful seizure in violation of his Fourth Amendment rights, and that claim will be dismissed.
Fourth Amendment-Excessive Force
An excessive force claim under the Fourth Amendment requires "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005). Regarding the injury requirement, the Fifth Circuit has repeatedly held that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007). Atwood alleges he was handcuffed behind his back for two to three hours and avers that such "malicious hand-cuffing ... for a long period of time was an intentional and unnecessary abuse of power meant to cause pain, both mental and physical." Nowhere in the complaint does he allege that he suffered any injury as a result of being handcuffed for an extended period of time. This claim thus fails as a matter of law.
State Law Claims
Plaintiffs have undertaken to assert state law claims for false arrest and imprisonment, malicious prosecution, abuse of process, "intentional infliction of physical pain" (which is presumably the tort of battery), intentional infliction of emotional *565 distress and negligence and/or gross negligence. Defendants seek dismissal of each of these claims on one or more grounds. In his response to defendants' motions, plaintiff does not even mention these claims, much less acknowledge or address any of the bases urged by defendants for dismissal. Having considered defendants' arguments, the court finds that dismissal of all these claims is in order.
Many of defendants' proffered defenses are based on various provisions of the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-1 et seq. The MTCA provides "the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." Southern v. Miss. State Hosp., 853 So.2d 1212, 1215 (Miss. 2003) (citing Miss. Code Ann. § 11-46-7(1) ). However, under the express terms of the MTCA, a governmental entity is not liable for any "misconduct by its employees which occurs outside the course and scope of that employee's employment, such as conduct which constitutes 'fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.' " Cockrell v. Pearl River Valley Water Supply Dist., 865 So.2d 357, 361 (Miss. 2004) (citing Miss. Code Ann. §§ 11-46-5(2) & 11-46-7(2) ).
In the court's opinion, it is not clear whether plaintiff's claims for false arrest and imprisonment, intentional infliction of emotional distress and/or battery are covered by the MTCA. See Meaux v. Mississippi, No. 1:14CV323-KS-RHW, 2015 WL 3549579, at *5 (S.D. Miss. June 8, 2015) (finding it unclear whether MTCA covered claims for false arrest and imprisonment, intentional infliction of emotional distress and battery since ambiguities in plaintiff's allegations prevented court from determining whether defendant officer acted maliciously vel non in his dealings with plaintiff).[6] However, to the extent they are covered by the MTCA, these claims are barred by the MTCA's one-year statute of limitations. See Miss. Code Ann. § 11-46-11(3)(a) (subject to applicable tolling provisions, "[a]ll actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based...."). Plaintiff's arrest occurred on December 27, 2015. He filed his complaint in this cause over a year later, on March 7, 2017. To the extent these claims are not covered by the MTCA, they are barred by Mississippi Code Annotated § 15-1-35, which establishes a one-year limitations period for certain intentional torts, including assault and battery, false imprisonment, malicious arrest, and menace.
Plaintiff's claim for malicious prosecution is clearly not covered by the MTCA, but it is subject to the one-year statute of limitations of § 15-1-35. See Univ. of Miss. Med. Cntr. v. Oliver, 235 So.3d 75, 82-83 (Miss. 2017) (malicious prosecution claim falls outside of MTCA's waiver of immunity); City of Mound Bayou v. Johnson, 562 So.2d 1212, 1218 (Miss. 1990) (malicious prosecution subject to one-year limitations period of § 15-1-35 ).
*566 A cause of action for malicious prosecution accrues and the statute of limitations begins to run as soon as there is a termination of the challenged proceedings in the plaintiff's favor. Joiner Ins. Agency, Inc. v. Principal Cas. Ins. Co., 684 So.2d 1242, 1244 (Miss. 1996). Atwood's claim for malicious prosecution based on the charge of hunting from a public road is time-barred, since he was found not guilty of that charge by the justice court on March 3, 2016. Likewise, the claim for malicious prosecution based on the charge of headlighting deer is time-barred. On March 3, 2016, the justice court dismissed that charge and sua sponte charged him, instead, with harassment of wildlife.
The charges of unauthorized use of auxiliary driving lamps and unauthorized shot size were not dismissed until December 9, 2016, and thus plaintiff's claim for malicious prosecution based on those charges was timely. However, plaintiff cannot succeed on his claim for malicious prosecution relating to these charges as he cannot establish a lack of probable cause, which is an essential element of his claim. See Oliver, 235 So.3d at 83 ("want of probable cause for the proceeding" is an essential element of malicious prosecution). The Mississippi Supreme Court has held that "[w]hen a conviction is obtained in a lower court prosecution, whether reversed or not, a prima facie case is made that probable cause is present, in the absence of fraud, perjury or other corrupt practices." Royal Oil Co. v. Wells, 500 So.2d 439, 443 (Miss. 1986). Here, the circuit court did ultimately dismiss the charges of unauthorized use of auxiliary lights and unlawful shot size, but it is undisputed that Atwood was convicted of those charges by the justice court. Plaintiff has made no effort to overcome this prima facie case of probable cause.
In addition to the foregoing claims, plaintiff has undertaken to assert state laws claim based on the seizure of and continuing failure to return his rifle and on the alleged seizure of his truck and refusal to return the vehicle until he paid for towing services which he did not request and did not need. It is undisputed that Heflin seized the .223 rifle he observed in Atwood's vehicle. In the court's opinion, contrary to plaintiff's urging, the seizure of the weapon was supported by probable cause and therefore was permissible under Mississippi Code Annotated § 49-7-103. Section 49-7-103 identifies certain property that is subject to forfeiture, including "any firearm .... used directly or indirectly in the hunting ... of deer at night with any headlight, lighting device or light amplifying device...." The Mississippi Supreme Court has held that seizure is authorized under § 49-7-103 where law enforcement agents "have probable cause to believe that the subject property has been used, directly or indirectly, to accomplish the various violations that are enumerated." One 1992 Toyota 4-Runner, Vin No. JT3VN39W2N8034941 v. State ex rel. Mississippi Dep't of Wildlife Fisheries & Parks, 721 So.2d 609, 618 (Miss. 1998). And it has held that a "criminal conviction is not a prerequisite to a civil forfeiture." State ex rel. Mississippi Bureau of Narcotics v. Lincoln Cty., 605 So.2d 802, 804 (Miss. 1992).
Furthermore, the evidence shows that following the initial seizure, MDWFP initiated civil forfeiture proceedings. Atwood does not dispute that the rifle was forfeited after he failed to respond to the notice of intention to forfeit seized property sent to him by certified mail. He may not now challenge that forfeiture in this case. See Pitts v. City of Madison, Miss., No. 3:15-CV-892-CWR-LRA, 2017 WL 6003645, at *5 (S.D. Miss. Dec. 4, 2017), on reconsideration in part, No. 3:15-CV-892-CWR-LRA, 2018 WL 1075729 (S.D. Miss. Feb. 27, 2018) ("Once an administrative forfeiture is *567 complete, a federal court 'lack[s] jurisdiction to review the forfeiture except for failure to comply with procedural requirements or to comport with due process.' ") (quoting United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996) ). Accordingly, summary judgment will be granted as to plaintiff's state law claim relating to the seizure of his rifle.
With reference to the alleged seizure of the truck, Atwood alleges that following his arrest, defendants, "[a]cting in a malicious and vindictive manner," called for a tow truck and, once the tow truck arrived, refused to release the truck to Donna (who was not arrested) until Atwood agreed to pay the tow truck driver cash in the amount of $267.50. He alleges that defendants' seizure of the vehicle was specifically forbidden by Mississippi Code Annotated § 49-7-103, which states, "No motor vehicle that is of the type required to be titled under the Mississippi Motor Vehicle Title Law is subject to forfeiture."[7] Atwood alleges that defendants' "fraudulent and wrongful" seizure of the truck was either "negligence, gross negligence, or an intentional tort."
Defendants argue, inter alia , that plaintiff's state law claims, including his unspecified claim relating to their initial decision to have the vehicle towed and their alleged refusal thereafter to release the vehicle until the tow truck driver was paid, are covered by the MTCA. They argue that under the MTCA, they are entitled to immunity under the discretionary function exception set forth in Mississippi Code Annotated § 11-46-9(1)(d). See Miss. Code Ann. § 11-46-9(1)(d) ("A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: ... Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused....").
Plaintiff's claim relating to the seizure of this truck is probably best characterized as a claim for trespass to chattels or conversion, both of which torts are generally considered to fall under the MTCA since neither requires proof of fraud, malice, libel, slander or defamation. See Zumwalt v. Jones County Bd. of Supervisors, 19 So.3d 672 (Miss. 2009) (holding that "conversion is an intentional tort arguably subject to the MTCA...."); Kilgo v. Tolar, No. 1:13CV229-SA-DAS, 2015 WL 3484533, at *6 (N.D. Miss. June 2, 2015) (finding that claim for trespass to chattels based on seizure of vehicle upon arrest was "likely one of those intentional torts which fall under the MTCA"). The court does recognize that Atwood's complaint characterizes Heflin's and Tullos' actions as "malicious" and "fraudulent". However, he has also specifically alleged that they were acting within the course and scope of their employment, and more pertinently, there is no evidence to suggest that defendants' actions were "malicious" or "fraudulent." Rather, what the evidence shows is that at the time called for a tow truck to have the vehicle towed, Heflin intended to arrest all three occupants, which would have meant that no one was available to remove the vehicle from the arrest site. Heflin subsequently reconsidered his initial decision to arrest Donna since he was *568 concerned for her safety if incarcerated at the Issaquena County Jail. By the time Heflin changed his mind about arresting Donna, the tow truck operator was already on his way to the arrest site; and upon the driver's arrival, he was entitled to payment for his services. In the court's opinion, under the circumstances, defendants' decision to have the truck towed was an exercise of discretion for which they are entitled to immunity, as was their decision to release the vehicle to Donna only upon payment of the tow truck driver.[8] Accordingly, defendants' motions for summary judgment as to this claim will be granted.
Conclusion
Based on all of the foregoing, it is ordered that the motions of defendants Heflin and Tullos for summary judgment and for judgment on the pleadings are granted.
A separate judgment will be entered in accordance with the Federal Rules of Civil Procedure.
SO ORDERED this 24th day of April, 2018.

Plaintiff originally filed the case in state court. The case was removed by defendants on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

Under § 49-7-95(5), it is harassment of wildlife for a person "to shine a light from a public road or right-of-way, or on the property of another, at night, from one-half (½) hour after sunset to one-half (½) hour before sunrise." Miss. Code Ann. § 49-7-95(5).

See Monell v. Dept. of Social Servs., 436 U.S. 658, 691-95, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) (supervisory officials cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability).

This is not disputed.

Atwood denies Tullos' assertion that he was not involved in the decision to arrest. Atwood claims he overheard Heflin request and receive Tullos' approval for the arrest. While there may be a disputed issue of fact as to whether Tullos participated in the decision to arrest Atwood, that dispute is not material and hence does not preclude summary judgment, since even if Tullos did have the personal involvement required for § 1983 liability, he would be entitled to qualified immunity.

Under the MTCA, "no employee may be held personally liable for acts or omissions occurring within the course and scope of the employee's duties," but an employee is "not ... considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." Miss. Code Ann. § 11-46-7(2). Thus, the MTCA only applies where the challenged acts were committed by a governmental employee within the course and scope of his employment; and an employee's malicious actions are not committed within the course and scope of employment.

To the extent Heflin and Tullos have argued that Mississippi Code Annotated § 49-7-103 explicitly authorized their seizure of the truck, they would appear to be mistaken. While the statute does state that "any firearm, equipment, appliance, conveyance or other property used directly or indirectly in the hunting or catching or capturing or killing of deer at night with any headlight, lighting device or light amplifying device" is subject to forfeiture, the statute goes on to state that "[n]o motor vehicle that is of the type required to be titled under the Mississippi Motor Vehicle Title Law is subject to forfeiture."

The court acknowledges defendants' claim that they were not involved in the payment transaction, which was strictly between Atwood and the tow truck driver, but for purposes of the motion, construes the facts in the light most favorable to Atwood.